**SO ORDERED.**

**SIGNED this 14 day of October, 2020.**



_____
**David M. Warren**
**United States Bankruptcy Judge**

_____

# UNITED STATES BANKRUPTCY COURT
# EASTERN DISTRICT OF NORTH CAROLINA
# RALEIGH DIVISION

IN RE:                                                                                      CASE NO. 19-05635-5-DMW

**JAMES MICHAEL KEANE**
                                                                                                    CHAPTER 7
            **DEBTOR**

## ORDER REGARDING OBJECTION TO CLAIM

This matter comes on to be heard upon the Debtor's Objection to SCG Falls Village Shopping Center LP Proof of Claim No. 3 ("Objection to Claim") filed by James Michael Keane ("Debtor") on July 17, 2020, the Response to Debtor's Objection to SCG Falls Village Shopping Center, LP's Proof of Claim No. 3 filed by SCG Falls Village Shopping Center, LP ("SCG") on July 30, 2020 and the Trustee's Response to Debtor's Objection to Claim No. 3 (SCG Falls Village Shopping Center, LP) filed by James B. Angell, Esq. ("Trustee"), Chapter 7 trustee, on August 11, 2020. The court conducted a hearing in Raleigh, North Carolina on September 22, 2020. Carena Brantley Lemons, Esq. appeared for the Debtor, William C. Smith Jr., Esq. appeared for SCG, and the Trustee appeared *pro se*. Based upon the pleadings, the arguments of counsel and the records of the Debtor's case and the case of Raleigh Entertainment Corporation ("REC") discussed *infra*, the court makes the following findings of fact and conclusions of law:

1.      This matter is a core proceeding pursuant to 28 U.S.C. § 157(b)(2) which the court has the authority to hear and determine pursuant to 28 U.S.C. § 157(b)(1).  The court has subject matter jurisdiction pursuant to 28 U.S.C. §§ 157(a) and 1334 and the General Order of Reference entered on August 3, 1984 by the United States District Court for the Eastern District of North Carolina.

2.      The Debtor filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on December 9, 2019 ("Petition Date").  The court appointed the Trustee to fulfill the duties as provided in 11 U.S.C. § 704.

3.      The Debtor is the sole owner of REC.  REC also filed a voluntary petition for relief under Chapter 7 of the United States Bankruptcy Code on December 9, 2019, initiating Case Number 19-05645-5-DMW ("REC Case").  The court appointed Holmes P. Harden, Esq. ("REC Trustee") as Chapter 7 trustee in the REC Case.

4.      REC conducted business under the name of Raleighwood Cinema Grill and previously operated a cinema within real property ("Property") located at 6609 Falls of Neuse Road in Raleigh, North Carolina.  REC leased the Property from SCG's predecessor in interest pursuant to a lease ("Lease") dated September 1, 1992 and subsequently amended and extended through January 31, 2023.  In 1992, the Debtor executed a Guaranty for "the punctual payment of the rent, additional rents and other charges" due under the Lease.  As of the Petition Date, the total monthly obligation due from REC to SCG each month was $9,625.00, comprising base rent of $6,343.00, a common area maintenance fee of $1,160.00, property taxes of $1,792.00, an insurance premium of $79.00 and "sign rent" of $251.00.

5.      The monthly sign rent of $251.00 is based on a Revocable License Agreement ("License Agreement") dated May 31, 2002, between REC as licensee and BVT Capital Partners

XVII, L.P. as licensor. The License Agreement governs the use by REC of an identification panel, for advertising purposes, on a sign located on Falls of Neuse Road.

6. After REC filed its bankruptcy petition, the REC Trustee remained in possession of the Property in order to conduct an auction of REC's assets at the Property. The REC Trustee then sought to reject the Lease, and SCG asserted the right to an administrative expense claim for post-petition rent due under the Lease. On March 6, 2020, the court entered an Order allowing SCG an administrative claim in amount of $8,200.00 and deeming the Lease rejected as of January 21, 2020. The REC Trustee and SCG agreed that SCG would retain a general unsecured claim for pre-petition rent and lease rejection damages under 11 U.S.C. § 502. The REC Trustee paid the amount of $8,200.00 to SCG on June 2, 2020.

7. In the Debtor's case, the Trustee filed a Notice of Need to File Proof of Claim Due to Recovery of Assets on January 10, 2020. That Notice set April 13, 2020 as the deadline for creditors of the Debtor to file a proof of claim. SCG filed a Proof of Claim ("Claim") in the Debtor's case in the amount of $161,028.11 on June 2, 2020. The Claim comprises pre-petition rent owed by REC in the amount of $53,728.11 plus lease rejection damages for twelve months' "rent" in the amount of $9,625.00,[1] totaling $115,500.00, minus the payment of $8,200.00 from the REC Trustee.

8. The Debtor objects to allowance of the Claim on the grounds that it was filed after the claims bar date of April 13, 2020. Section 502(b)(9) generally requires disallowance of claims that are not filed timely, but it specifically excepts from its scope claims that are "tardily filed as permitted under paragraph (1), (2), or (3) of [11 U.S.C. §] 726(a)." 11 U.S.C. § 502(b)(9). Section 726(a)(3) provides for the payment of tardily filed claims in Chapter 7 cases after the payment of,

---

[1] The monthly base rent appears to have been $6,343.50, but SCG rounded down to $6,343.00 for its total calculation of lease rejection damages.

*inter alia*, timely filed general unsecured claims. The Claim should be subordinated to the timely filed claims in the Debtor's case, but it should not be disallowed.

9. The Debtor also asserts that the Claim is of an amount higher than allowed by 11 U.S.C. § 502(b)(6). The Debtor argues that SCG has improperly implemented the formula provided in § 502(b)(6) in its calculation of damages due under the Lease, and also that the rejection damages include monthly expenses outside the scope of rent due under the Lease. SCG argues that the Claim has been calculated properly under § 502(b)(6).

10. Pursuant to § 502(b)(6),

> the claim of a lessor for damages resulting from the termination of a lease of real property [is limited to]
> (A) the rent reserved by such lease, without acceleration, for the greater of one year, or 15 percent, not to exceed three years, of the remaining term of such lease, following the earlier of—
> (i) the date of the filing of the petition; and
> (ii) the date on which such lessor repossessed, or the lessee surrendered, the leased property; plus
> (B) any unpaid rent due under such lease, without acceleration, on the earlier of such dates.

11 U.S.C. § 502(b)(6).[2]

11. In support of his first argument related to § 502(b)(6), the Debtor asserts that SCG "is limited to damages in the amount of $34,254.90 which reflects fifteen percent (15%) of the three (3) years remaining in the lease plus the unpaid rent if funds are available." That calculation is a misapplication of the formula recited in § 502(b)(6).[3] Section 502(b)(6) limits SCG's prospective rent damages to rent for the *greater of* one year, or 15 percent, not to exceed three

---

[2] In an unpublished 1997 opinion, the Fourth Circuit Court of Appeals found that § 502(b)(6) limits lessor claims against lessees and guarantors alike, making § 502(b)(6) applicable in this case. *See Cutler v. Lindsey (In re Lindsey)*, 1997 U.S. App. LEXIS 30502, at *7-*8 (4th Cir. Nov. 7, 1997).

[3] This calculation is also incorrect because it uses only the base rent due under the Lease and does not account for the monthly common area maintenance fee of $1,160.00, property taxes of $1,792.00 and an insurance premium of $79.00. At the hearing, the Debtor initially argued that the common area maintenance fee of $1,160.00 should not be included in the § 502(b)(6) calculation, but the Debtor subsequently abandoned that argument.

years, of the remaining term of the Lease, following the earlier of the Petition Date or the date on which SCG repossessed, or REC surrendered, the Property. The REC Trustee remained in possession of the Property after the Petition Date, so § 502(b)(6) dictates that the court use the Petition Date as the starting date for calculating rent damages. As of the Petition Date, there were just under thirty-eight months remaining under the Lease term. Fifteen percent of the remaining term would equate to less than six months, so applying the language of § 502(b)(6), rent for one year may be included in the damages calculation.

12. The Debtor did not challenge in the Objection to Claim the mitigation efforts made by SCG after the REC Trustee rejected the Lease; however, at the hearing, counsel for SCG stated that SCG made marketing efforts for the Property beginning in late 2019 or early 2020. In February 2020, SCG received a letter of intent from a potential replacement tenant interested in operating a comedy club in the Property, but that tenant ultimately did not enter into a lease of the Property, purportedly due to the effects of the coronavirus pandemic and prohibitions on indoor gatherings. Counsel for SCG stated that despite ongoing marketing efforts, SCG has been unable to secure a replacement tenant, and as of the date of the hearing, even if SCG were able to locate a tenant immediately, SCG would not likely receive rental income from a new tenant before the end of November 2020 due to concessions a new tenant would require. It appears SCG has conducted sufficient mitigation efforts to be entitled to the full amount allowed under § 502(b)(6) for rent reserved by the Lease.

13. Regarding his second argument related to § 502(b)(6), the Debtor asserts that the sign rent due pursuant to the License Agreement should not be included in the calculation of rent reserved by the Lease. The Debtor argues that any sign rent owed by REC to SCG is owed pursuant to the License Agreement, and it is not covered by the Guaranty that the Debtor executed to

guarantee "the punctual payment of the rent, additional rents and other charges" due under the Lease.  The Debtor did not include this argument in the Objection to Claim but raised it at the hearing.  The Trustee questioned at the hearing whether the licensor under the License Agreement is a third party unrelated to SCG.  SCG stated that it believed, but did not have evidence available at the hearing to prove, that it is the successor in interest to the licensor under the License Agreement.

14. If the sign rent were excluded from SCG's § 502(b)(6) damages calculation, then the Claim would be reduced by $3,012.00 to $158,016.11.  At the hearing, the Trustee stated that he does not foresee having sufficient funds to pay $158,016.11 to SCG, so a determination whether the sign rent should be included in the § 502(b)(6) calculation would have no effect on the disbursement SCG will receive in the Debtor's case.  The Claim should be reduced by $3,012.00 to $158,016.11; now therefore,

It is ORDERED, ADJUDGED and DECREED as follows:

1. The Objection to Claim be, and hereby is, overruled in part and sustained in part; and

2. The Claim of SCG be, and hereby is, allowed in the reduced amount of $158,016.11, to be paid pursuant to 11 U.S.C. § 726(a)(3).

END OF DOCUMENT